THE ROCKY CITY.[1]

THE ROCKY CITY *v.* THREE HUNDRED AND FIFTY TONS OF IRON.

*(District Court, E. D. Pennsylvania.* December 23, 1887.)

DEMURRAGE—DUTY OF CONSIGNEE TO PROVIDE WHARF—NOTICE.
    When the duty of providing a wharf, at which to unload, is upon the consignee, he is entitled to reasonable notice of the time when the vessel will be ready to unload, and, in the absence of such notice, demurrage will be allowed only after the lapse of a reasonable time after notice was actually given.

In Admiralty.
*John B. Lane,* for libelant.
*Charles Gibbons, Jr.,* for respondents.

BUTLER, J. An exception filed to the libel raised the question of respondents' obligation to provide a wharf. This question was decided adversely to the respondents. It need not be further considered. ·

On the eleventh of May, the respondents, being informed of the libelant's arrival, notified the libelant that he might discharge at any wharf he could obtain. He sought, unsuccessfully, for a wharf, and, on the fourteenth of May, notified respondents of the fact that he was then ready to unload cargo, and demanded a wharf at which to do it. Immediately the respondents replied that they had information a wharf might be had at Ellicott's. The libelant testifies that he went to Ellicott's, and was told by the individual in charge that he could not have

---

· [1]Reported by C. Berkeley Taylor, Esq., of the Philadelphia bar.

a berth there. From day to day he complained of the failure to provide a berth, and presented bills for demurrage. On the twentieth of May, the respondents informed him that he could go to pier 35. On inquiring there, the next day, he learned that the covering of that pier had fallen, and was offered 34 instead. This was Saturday. On the following Tuesday, the 24th, he took the vessel into 34. A few hours later, she was removed to 39, and unloaded without further delay. Nine days' demurrage is claimed. In any proper view of the case, the claim is too high. It does not appear that the respondents were informed of the particular time when libelant would probably be ready to unload, previously to the 15th, nor that he had been unable to find a wharf. The libelant could have known, 48 hours in advance, when he would need the wharf, or could have approximated the time very closely. He should not, therefore, have waited until the wharf was immediately needed. He knew that, in the crowded condition of the port at the time, such accommodations could not instantly be obtained. It was therefore unreasonable to delay giving the notice and seek to hold the respondents liable to demurrage from that date. Furthermore, it does not appear that respondents were informed of libelant's failure to find a berth, as requested, until the 14th. While it was true he was not required to find a berth, yet he sought for one at respondents' request, and, it may be presumed, they knew this, and expected him to succeed. The demurrage should not, therefore, commence before Monday, the 16th. Again, I do not see any justification for delaying to move until the twenty-fourth of May, in pursuance of the notice dated four days earlier. The delay to move on the 20th was excusable; but late on that day he was informed that he might go into another berth, adjoining No. 35. While it was then too late to move, and he could not be expected to do so on the following day, which was Sunday, he could have moved on the next, the 23d. The circumstance that he was finally required to take 39 is immaterial. Had he gone on Monday, he would have obtained this berth, as he did the next day, if the one promised was unavailable. For the failure to move on Monday, another day should be deducted. Thus, it is seen that the actual delay, resulting from respondents' failure of duty, covered but six days.

The respondents contend that even this time was lost through libelant's fault; that they procured a wharf at Ellicott's on the 14th, at which he should have unloaded. The latter allegation is denied; and the burden of proof respecting it is on the respondents. It is not necessary to decide whether the end of berth 60 was a fit place for the vessel. It is certain that she would have been subject to interruption there, as Mr. Gillingham (secretary of the board of wardens) says; and would also have been subject to some risk of injury. That other vessels as large or larger may have chosen to suffer the disadvantage, and incur the risk of this berth, is immaterial. I do not, however, propose to decide the question. The only evidence that the berth was procured is found in the testimony of Mr. Ellicott's clerk, who says the libelant called, and was informed by Mr. Ellicott that he could have it,—the end

of 60, or the one along-side.   On the other hand, the libelant, Mr. Stangebye, testifies that he went to the wharf on receiving respondents' notice, and was told by the individual in charge that he could not have a berth there.   Mr. Ellicott was not called to sustain his clerk, presumably because he could not do it.   No motive is apparent for the libelant's refusal of a proper wharf there, if he could have obtained it.   He appeared anxious to unload, and get away.   Under the circumstances, we cannot credit the clerk's testimony against libelant's; and the burden of proof being on the respondents, this disposes of the question.   I have not overlooked the fact of libelant's interest, and the apparent disinterestedness of the clerk.   The latter, however, may have heard inaccurately, or his memory be at fault.   If Mr. Ellicott gave permission to enter, he doubtless knows it, and his testimony would have removed all doubt.

I will, therefore, allows six days' demurrage, according to the terms of the charter, and for the freight.   The question whether demand was made for the latter before suit is not important.   It related to costs only.   The disposition made of the claim for demurrage settles this.